**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

SYBIL CARTER,                          )
                                       )
                 Plaintiff,            )
                                       )
        v.                             )        1:15CV00981
                                       )
CAROLYN W. COLVIN,                     )
Acting Commissioner of Social          )
Security,                              )
                                       )
                 Defendant.            )

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Sybil Carter, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 7 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 10, 12; see also Docket Entry 11 (Plaintiff's Memorandum), Docket Entry 13 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

**I.  PROCEDURAL HISTORY**

Plaintiff applied for DIB and SSI, alleging an onset date of November 1, 2008. (Tr. 262-75.) Upon denial of those applications initially (Tr. 106-27, 161-81) and on reconsideration (Tr. 128-57,

184-201), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 202-03).[1] Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 72-105.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 49-66.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-7), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] meets the insured status requirements of the [] Act through December 31, 2013.

. . .

2. [Plaintiff] has not engaged in substantial gainful activity since November 1, 2008, the alleged onset date.

3. [Plaintiff] has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, and generalized anxiety disorder.

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional capacity to perform light work . . . with additional limitations. Specifically, [Plaintiff] can lift or carry 10 pounds frequently and 20 pounds occasionally. She can

_____

[1] Prior to the hearing, Plaintiff amended her onset date to September 29, 2011. (See Tr. 52, 75, 307.)

sit, stand, or walk, each for up to 6 hours in a normal
8-hour workday, but requires the option to alternate
between sitting or standing at 60 minute intervals. She
can occasionally balance, stoop, kneel, crouch, crawl,
and climb ramps or stairs, but can never climb ladders,
ropes, or scaffolds. [Plaintiff] can occasionally reach
with the bilateral upper extremities and she must avoid
concentrated exposure to workplace hazards, such as
unprotected heights and dangerous or moving machinery.
Finally, [Plaintiff] can perform work consisting of
simple, routine, repetitive tasks.

. . .

6. [Plaintiff] is unable to perform any past relevant
work.

. . .

10. Considering [Plaintiff's] age, education, work
experience, and residual functional capacity, there are
jobs that exist in significant numbers in the national
economy that [she] can perform.

. . .

11. [Plaintiff] has not been under a disability, as
defined in the [] Act, from November 1, 2008, through the
date of this decision.

(Tr. 54-66 (bold font and internal parenthetical citations
omitted).)[2]

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits." Hines v.
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope

---

[2] The ALJ's finding that Plaintiff did not qualify as disabled from the original
alleged onset date of November 1, 2008, through the date of the decision (July
25, 2014) (see Tr. 66 (finding no. 11); see also Tr. 54 (finding no. 2)
(referencing original alleged onset date)) necessarily encompasses a
determination that Plaintiff did not qualify as disabled from the amended alleged
onset date of September 29, 2011, through the date of decision.

of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as

4

adopted by the Commissioner].” <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). “Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ).” <u>Id.</u> at 179 (internal quotation marks omitted). “The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ’s finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law.” <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that “[a] claimant for disability benefits bears the burden of proving a disability,” <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, “disability” means the “‘inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,’” <u>id.</u> (quoting 42 U.S.C. § 423(d)(1)(A)).[3] “To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational

---

[3] The Act “comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical.” <u>Craig</u>, 76 F.3d at 589 n.1 (internal citations omitted).

5

evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[4] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro,

---

[4] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[5] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[6]

---

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[6] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in
(continued...)

7

## B. Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) the ALJ "erred in finding that [Plaintiff's] impairments did not meet or medically equal Listings 1.02, 1.04, 14.09, and 12.06" (Docket Entry 11 at 8 (capitalization omitted);

2) the ALJ "erred in finding that [Plaintiff] has the [RFC] to perform a limited range of light work" (id. at 11 (capitalization omitted)); and

3) the ALJ "erred in failing to give the appropriate weight to the opinion evidence in the record" (id. at 13 (capitalization omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 13 at 13-20.)

### 1. Listings 1.02, 1.04, 12.06, and 14.09

In Plaintiff's first issue on review, she asserts that the ALJ erred by failing to find that her physical impairments met or equaled the criteria of Listings 1.02 ("Major dysfunction of a joint(s) (due to any cause)"), 1.04 ("Disorders of the spine"), and 14.09 ("Inflammatory arthritis"), and by neglecting to find that

---

[6] (...continued)
the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

her generalized anxiety disorder met or equaled the criteria of Listing 12.06 ("Anxiety Related Disorders"). (Docket Entry 11 at 8-11.) Plaintiff does not attempt to show that her impairments meet all of the criteria of the listings in question; rather, she contends that the "combination of [her] symptoms should result in [P]laintiff meeting and/or equaling the functional equivalent of the listings." (Id. at 10; see also id. at 11.) Plaintiff's argument falls short.

"Under Step 3, the [Social Security Administration's SEP] regulation states that a claimant will be found disabled if he or she has an impairment that 'meets or equals one of [the] listings in appendix 1 of [20 C.F.R. Pt. 404, Subpt. P] and meets the duration requirement.'" Radford v. Colvin, 734 F.3d 288, 293 (4th Cir. 2013) (quoting 20 C.F.R. § 404.1520(a)(4)(iii)) (internal bracketed numbers omitted). "The listings set out at 20 CFR pt. 404, subpt. P, App. 1, are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 529-30 (1990) (internal footnote and parentheticals omitted).

"In order to satisfy a listing and qualify for benefits, a person must meet all of the medical criteria in a particular listing." Bennett, 917 F.2d at 160 (citing Zebley, 493 U.S. at

530, and 20 C.F.R. § 404.1526(a)); see also Zebley, 493 U.S. at 530 ("An impairment that manifests only some of those criteria [in a listing], no matter how severely, does not qualify."). "An impairment or combination of impairments medically equals a listing when it is at least equal in severity and duration to the criteria of any listed impairment." Grimes v. Colvin, No. 1:14CV891, 2016 WL 1312031, at *4 (M.D.N.C. Mar. 31, 2016) (unpublished) (Osteen, Jr., C.J.) (citing 20 C.F.R. § 416.926(a)-(b)); see also Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) ("A finding of medical equivalence must be based on medical evidence only." (citing 20 C.F.R. § 404.1529(d)(3)) (emphasis added)). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of [her] unlisted impairment or combination of impairments is as severe as that of a listed impairment." Zebley, 493 U.S. at 531 (emphasis added).

"[O]nly where there is ample evidence in the record to support a determination that a claimant's impairment meets or equals one of the listed impairments must the ALJ identify the relevant listed impairments and compare them to evidence of a plaintiff's symptoms." Reynolds v. Astrue, No. 3:11CV49, 2012 WL 748668, at *4 (W.D.N.C. Mar. 8, 2012) (unpublished) (citing Cook v. Heckler, 783 F.2d 1168, 1172-73 (4th Cir. 1986)); see also Russell v. Chater, No. 94-2371, 60 F.3d 824 (table), 1995 WL 417576, at *3 (4th Cir. July 7, 1995) (unpublished) ("Cook, however, does not establish an

inflexible rule requiring an exhaustive point-by-point discussion [of listings] in all cases.").

**a.   Listing 1.02**

To meet the requirements of Listing 1.02, a claimant must show "gross anatomical deformity" of a "major peripheral joint" (hip, knee, ankle-foot, shoulder, elbow, or wrist-hand) resulting in an "inability to ambulate effectively, as defined in [Section] 1.00B2b," 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02A, or an "inability to perform fine and gross movements effectively, as defined in [Section] 1.00B2c," id., § 1.02B.  The cross-referenced regulatory sections, in turn, state that "[i]nability to ambulate effectively means an extreme limitation of the ability to walk . . . defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities," id., § 1.00B2b(1) (internal parenthetical citation omitted), and "[i]nability to perform fine and gross movements effectively means an _extreme_ loss of function of both upper extremities; _i.e._, an impairment(s) that interferes _very seriously_ with the individual's ability to initiate, sustain, or complete activities," id., § 1.00B2c (emphasis added).

Here, although the ALJ did not expressly discuss the applicability of Listing 1.02 (see Tr. 55-57), Plaintiff has not even alleged (much less shown) that "there is ample evidence in the

11

record to support a determination that [she] met or equalled" Listing 1.02, <u>Cook</u>, 783 F.2d at 1172 (emphasis added). (<u>See</u> Docket Entry 11 at 8-11.)  Plaintiff's discussion identifies neither "gross anatomical deformity" of any "major peripheral joint" nor inabilities to "ambulate effectively" or "perform fine and gross movements." (<u>See</u> <u>id.</u>)  Similarly, Plaintiff has not come forward with medical evidence that would establish an equivalency between such conditions and her own. (<u>See</u> <u>id.</u>)  Thus, the ALJ did not err by omitting an analysis of Listing 1.02. <u>See</u> <u>Mills v. Colvin</u>, No. 5:13CV432FL, 2014 WL 4055818, at *4 (E.D.N.C. Aug. 14, 2014) (unpublished) (rejecting contention "that the ALJ erred by not discussing applicability of listings at step three of the [SEP], including Listing 1.02 for [the claimant's] knees" because she "d[id] not cite any evidence" that would satisfy "requirements" of those listings); <u>see also</u> <u>Hughes v. B/E Aerospace, Inc.</u>, No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) (unpublished) (Schroeder, J.) ("A party should not expect a court to do the work that it elected not to do.").

**b. Listing 1.04**

For Listing 1.04, a claimant must offer proof not only of a "[d]isorder[] of the spine," such as "degenerative disc disease," but also "result[ant] compromise of a nerve root . . . or the spinal cord," 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.04, <u>and</u>:

> A. Evidence of <u>nerve root compression</u> characterized by neuroanatomic distribution of pain, limitation of motion

of the spine, <u>motor loss (atrophy with associated muscle weakness or muscle weakness</u>) accompanied by sensory or reflex loss <u>and, if there is involvement of the lower back, positive straight-leg raising test</u> (sitting and supine);
<u>or</u>
B. <u>Spinal arachnoiditis</u>, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, <u>resulting in the need for changes in position or posture more than once every 2 hours</u>;
<u>or</u>
C. <u>Lumbar spinal stenosis</u> resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and <u>resulting in inability to ambulate effectively, as defined in 1.00B2b</u>.

<u>Id.</u> (emphasis added).

In this case, although the ALJ did describe the requirements of Listing 1.04 in his decision (<u>see</u> Tr. 55-56), he did not provide any specific analysis supporting his finding that Plaintiff's degenerative disc disease did not meet or equal the criteria of that listing. However, the ALJ's omission of such analysis remains harmless under the facts presented here, because Plaintiff cannot show "there is <u>ample evidence</u> in the record to support a determination that [she] met or equalled" Listing 1.04, <u>Cook</u>, 783 F.2d at 1172 (emphasis added). (<u>See</u> Docket Entry 11 at 8-11.) As an initial matter, Plaintiff neither clarified in her argument whether her spinal impairments met or equaled the criteria of paragraphs A, B, or C of Listing 1.04, nor whether she relied on her cervical or lumbar impairments (or both) to meet or equal the listing. (<u>Id.</u>) Plaintiff's failure to develop that argument

13

should defeat her claim of meeting/equaling Listing 1.04. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks omitted)); Hughes, 2014 WL 906220, at *1 n.1 ("A party should not expect a court to do the work that it elected not to do.").

Further, ample evidence does not exist that Plaintiff's back impairments could meet or equal the criteria of Listing 1.04. With regard to paragraph A, the record lacks evidence of "motor loss," defined as "atrophy with associated muscle weakness or muscle weakness." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.04A. The regulations further explain that "a report of atrophy is not acceptable as evidence of significant motor loss without circumferential measurements of both thighs and lower legs, or both upper and lower arms, as appropriate, at a stated point above and below the knee or elbow given in inches or centimeters." Id., § 1.00E1. Although the record contains some evidence of reduced strength in Plaintiff's upper extremities, those reports lack any accompanying measurements demonstrating atrophy. (See Tr. 22, 421.) Paragraph B of Listing 1.04 requires a diagnosis of spinal arachnoiditis, which the record clearly lacks. Respecting paragraph C, Plaintiff cannot show an "inability to ambulate effectively," as the record lacks evidence that Plaintiff requires a hand-held assistive device to ambulate that limits the use of

14

both her upper extremities. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 1.00B2b(1), 1.04C. Moreover, Plaintiff has not come forward with medical evidence that would warrant a finding that her impairments rise to a level equivalent to the foregoing listing requirements. (<u>See</u> Docket Entry 11 at 8-11.)

Thus, the ALJ did not err by finding that Plaintiff's impairments failed to meet or equal Listing 1.04.

**c.  Listing 12.06**

Regarding Listing 12.06, Plaintiff argues as follows:

> The required level of severity for [Listing 12.06] is met when the plaintiff suffers from at least one of the following: generalized persistent anxiety accompanied by three out of the four symptoms of motor tension, autonomic hyperactivity, apprehensive expectation, and vigilance and scanning, or a persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, situation, or activity, or recurrent severe panic attacks manifested by sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom, or recurrent obsessions/compulsions which are a source of marked distress, or recurrent and intrusive recollections of a traumatic experience which are a source of marked distress.

(Docket Entry 11 at 10.) Plaintiff misstates the requirements for Listing 12.06 by representing that satisfaction <u>solely</u> of the criteria in paragraph A would allow her to meet the listing.

In fact, in order to meet Listing 12.06, a claimant must <u>either</u> satisfy the requirements of both paragraphs A <u>and</u> B <u>or</u> of paragraphs A <u>and</u> C. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.06. The ALJ here assumed without express analysis that

15

Plaintiff's generalized anxiety disorder met the criteria of paragraph A and proceeded to analyze whether Plaintiff could meet the requirements of paragraphs B and C, ultimately concluding that she could not do so. (See Tr. 56-57.) Plaintiff's failure to develop any argument addressing the criteria of paragraphs B or C (see Docket Entry 11 at 8-11) dooms her claim concerning Listing 12.06, see, e.g., Zannino, 895 F.2d at 17 ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks omitted)); Nickelson v. Astrue, No. 1:07CV783, 2009 WL 2243626, at *2 n.1 (M.D.N.C. July 27, 2009) (unpublished) (Dixon, M.J.) ("[A]s [the plaintiff] failed to develop these arguments in his [b]rief, the [C]ourt will not address them."), recommendation adopted, slip op. (M.D.N.C. Sept. 21, 2009) (Schroeder, J.).[7]

**d.  Listing 14.09**

Although the heading and introductory sentence of Plaintiff's argument each assert that the ALJ erred by failing to find that Plaintiff's impairments met or equaled Listing 14.09 (see Docket Entry 11 at 3, 8), Plaintiff failed to make any argument regarding

---

[7] Alternatively, for reasons detailed in Defendant's Memorandum (see Docket Entry 13 at 16-17), the Court should deny relief with regards to Listing 12.06 because substantial evidence supports the ALJ's determination that Plaintiff suffered only mild limitation in activities of daily living and social functioning, moderate limitation in concentration, persistence, or pace, and no episodes of decompensation of extended duration (see Tr. 56), and his conclusion that Plaintiff "has not displayed a complete inability to function independently outside the area of her home" (Tr. 57). Moreover, Plaintiff has not explained how, given the sufficiency of those findings, she could show that her mental impairment medically equaled the requirements of Listing 12.06. (See Docket Entry 11 at 8-11.)

the applicability of Listing 14.09 to her claim (see id. at 8-11).
That failure defeats her claim regarding Listing 14.09. See, e.g.,
Zannino, 895 F.2d at 17 ("[A] litigant has an obligation to spell
out its arguments squarely and distinctly, or else forever hold its
peace." (internal quotation marks omitted)); Nickelson, 2009 WL
2243626, at *2 n.1 ("[A]s [the plaintiff] failed to develop these
arguments in his [b]rief, the [C]ourt will not address them.").[8]

In sum, Plaintiff's assignment of error related to Listings
1.02, 1.04, 12.06, and 14.09 fails as a matter of law.

## 2. RFC

Next, Plaintiff alleges that the ALJ "erred in determining
that [P]laintiff can perform a limited range of light work."
(Docket Entry 11 at 11.)  More particularly, Plaintiff maintains
that a February 2014 Medical Source Statement ("2014 MSS")
completed by treating physician Dr. Paul Singh, a consultative
psychological examination conducted by Mr. Clyde Collins, M.A., and
Plaintiff's "credible testimony" establish that Plaintiff cannot
perform work even at the sedentary level of exertion.  (Id. at 12
(citing Tr. 87-88, 575-78, 434-38).)  Plaintiff further points to
the VE's testimony that no jobs would accommodate an individual
requiring a sit/stand option every 15 minutes.  (Id. at 13 (citing
Tr. 99).)  Plaintiff's allegations warrant no relief.

---

[8] Further, no plausible basis exists to conclude that Plaintiff's impairments
meet or medically equal the requirements of Listing 14.09, as the record lacks
a diagnosis of "inflammatory arthritis," an immune system disorder, see 20 C.F.R.
Pt. 404, Subpt. P, App'x 1, § 14.09, or anything medically equivalent.

RFC measures the most a claimant can do despite any physical and mental limitations. Hines, 453 F.3d at 562; 20 C.F.R. §§ 404.1545(a), 416.945(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See Hines, 453 F.3d at 562–63; 20 C.F.R. §§ 404.1545(b), 416.945(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. §§ 404.1567, 416.967. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. See 20 C.F.R. §§ 404.1569a(c), 416.969a(c). An ALJ need not discuss every piece of evidence in making an RFC determination. See Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (citing Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005)). However, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).

In the instant case, the ALJ supported his RFC determination with substantial evidence. He discussed Plaintiff's testimony and the objective medical evidence (including Dr. Singh's 2014 MSS and Mr. Collins's consultative examination) in a fair amount of detail (see Tr. 58-63); however, the ALJ ultimately did not find Plaintiff's testimony entirely credible (see Tr. 58, 63), and gave

18

"little weight" to Dr. Singh's 2014 MSS and Mr. Collins's opinions reported in the consultative examination (see Tr. 64). For the reasons discussed in more detail in conjunction with Plaintiff's third assignment of error, substantial evidence supports the ALJ's decision to afford little weight to Dr. Singh's 2014 MSS and Mr. Collins's opinions. Substantial evidence also supports the ALJ's analysis of Plaintiff's subjective complaints.

Social Security Ruling 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements ("SSR 96-7p"), 1996 WL 374186 (July 2, 1996), as applied by the Fourth Circuit in Craig, 76 F.3d at 594-95, provides a two-part test for evaluating a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (quoting 20 C.F.R. § 404.1529(b)). Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an assessment of the intensity and persistence of the claimant's symptoms, as well as the extent to which they affect his or her ability to work. Id. at 595. In making that determination, the ALJ:

> must take into account not only the claimant's statements about her pain, but also all the available evidence,

including the claimant's medical history, medical signs, and laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Id. (internal citations and quotation marks omitted).

In this case, the ALJ found for Plaintiff on part one of the inquiry, but ruled, in connection with part two, that her "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely credible for the reasons explained in [the ALJ's] decision." (Tr. 58.) In making that part two finding, the ALJ noted as follows:

As has been found above, [Plaintiff] does have severe impairments that limit her ability to perform work related functions. However, the issue is not whether [Plaintiff] can be restored to full health, or even rendered free from pain. Rather, an individual's [RFC] is what the individual can still do despite his or her limitations. Viewed in this light, to the extent that [Plaintiff] alleges limitations greater than those set forth in the current [RFC], those claims are not supported by the evidence.

The undersigned begins by noting that [Plaintiff] was seen on a regular basis by Carolina Spine Center. During these appointments, [Plaintiff] would report pain levels that typically ranged from a 7 to 9 in severity. However, physical findings concerning [Plaintiff's] cervical, thoracic, and lumbar spine uniformly show a normal range of motion and no tenderness in the cervical or thoracic spine, as well as flexion to 50 to 60 degrees and extension to 10 degrees in the lumbar spine, with no tenderness. Furthermore, there are multiple notations that [Plaintiff's] medication regimen was working well. The record also shows [Plaintiff] being seen by primary providers for unrelated issues, and those notes report [Plaintiff's] back problem (lumbago) as stable and

20

> managed by the spine center. Similar observations show
> that while [Plaintiff] reports back and neck pain, she is
> observed with a normal gait and station, and normal
> muscle tone and strength.
>
> In addition, the undersigned finds that [Plaintiff's]
> reported level of activity is not consistent with an
> inability to perform all work. She reports performing
> daily tasks such as taking her daughter to school, caring
> for a pet, and performing light housework. She indicates
> that she enjoys fishing, and goes once or twice a week,
> weather permitting.

(Tr. 63 (internal citations omitted).) The ALJ considered the relevant factors in evaluating Plaintiff's subjective complaints and his analysis thus complies with SSR 96-7p and Craig.

In the face of the ALJ's compliant analysis, Plaintiff raises no specific challenge to the ALJ's evaluation of Plaintiff's subjective complaints (see Docket Entry 11 at 12-13); rather, she merely recites her own testimony, deems it "credible," and concludes that the ALJ had a duty to account for such testimony in evaluating her RFC (id. at 12). Given the "extremely limited" nature of judicial review in this context, Frady, 646 F.2d at 144, Plaintiff's approach entitles her to no relief, see, e.g., Zannino, 895 F.2d at 17 ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks omitted)); Nickelson, 2009 WL 2243626, at *2 n.1 ("[A]s [the plaintiff] failed to develop these arguments in his [b]rief, the [C]ourt will not address them.").

In short, Plaintiff's second assignment of error lacks merit.

### 3. Opinion Evidence

Lastly, Plaintiff contends that the ALJ erred in evaluating the opinion evidence of record. (See Docket Entry 11 at 13-16.) Specifically, Plaintiff faults the ALJ for failing to give proper weight to 1) the opinions of Dr. Singh on the 2014 MSS; 2) the opinions of consultative examiner Mr. Collins (working under Dr. William Link); 3) the statements of Nancy Horne, Plaintiff's mother, on a Third-Party Function Report; and 4) the disability determination by the North Carolina Department of Health and Human Services approving Plaintiff's application for Medicaid. (See id. (citing Tr. 64-65, 339-46, 434-38, 575-78); see also Tr. 582-88.) Plaintiff's arguments fall short.

### a. Dr. Singh's 2014 MSS

The treating source rule generally requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("[T]reating sources . . . provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). The rule also recognizes, however, that not all treating sources or treating source opinions merit the same deference. The nature and extent of

22

each treatment relationship appreciably tempers the weight an ALJ affords an opinion. See 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii). Moreover, as subsections (2) through (4) of the rule detail, a treating source's opinion, like all medical opinions, deserves deference only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence of record. See 20 C.F.R. §§ 404.1527(c)(2)-(4), 416.927(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590 (emphasis added).

Here, the ALJ's evaluation of Dr. Singh's opinions comports with the above-cited regulations and Craig. The ALJ began by noting that Dr. Singh had provided an earlier Medical Source Statement ("2013 MSS"), in which he opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, could sit, stand, and walk for up to six hours in an eight-hour workday, could perform occasional postural movements, could occasionally reach with the upper extremities, and could have only limited exposure to hazards such as moving machinery or unprotected heights. (See Tr. 63; see also Tr. 440-43.) The ALJ then discussed the opinions in Dr. Singh's 2014 MSS, submitted just over four months after the 2013 MSS (see Tr. 63-64), which limited Plaintiff to only 10 pounds of lifting occasionally and 5 pounds of lifting frequently,

23

standing for only 15 minutes at a time, sitting for only 30 minutes at a time, and ability to work for only one to two hours per day (see Tr. 575-78). The ALJ subsequently provided this rationale for the relative weights assigned to the 2013 MSS and 2014 MSS:

> The undersigned gives great weight to the [2013] MSS, finding that this assessment is consistent with the treatment notes from Carolina Spine Center. However, little weight is given to the [2014] MSS. The undersigned notes that this was prepared approximately four months later and while Dr. Singh lowered [Plaintiff] to a sedentary level in this report, <u>his treating notes do not reflect any changes in [Plaintiff's] physical findings that would support such a functional decrease</u>.

(Tr. 64 (emphasis added).) Essentially, the ALJ discounted the opinions on Dr. Singh's 2014 MSS because the objective findings in his own treatment records did not support those opinions – a valid reason to discredit the opinions of a treating physician. <u>See</u> 20 C.F.R. §§ 404.1527(c), 416.927(c) (providing that treating source opinion merits controlling weight when the opinion "on the nature and severity of [a claimant's] impairment(s) is <u>well-supported by medically acceptable clinical and laboratory diagnostic techniques</u> and is not inconsistent with the other substantial evidence in [the] case record" (emphasis added)).

Although Plaintiff argues that her "impairments have progressed over time and her conditions have degenerated [and] [t]herefore it is reasonable for Dr. Singh's later [MSS] to have more limitations than a previous [MSS]," Plaintiff fails to provide a single citation to a treatment record that would demonstrate

24

progression of her impairments between October 2013 and February 2014. (Docket Entry 11 at 14-15.) Indeed, Dr. Singh only treated Plaintiff three times between the signing of the 2013 MSS and of the 2014 MSS – November 19, 2013, January 30, 2014, and February 27, 2014. (See Tr. 451-54, 516-22.) On each of those occasions, Dr. Singh recorded the same physical findings as he had on all of the office visits of record preceding the 2013 MSS. (Compare Tr. 399-400, 402-03, 407, 410, 413-14, 457, 461, 468, 472, 476, 479-80, 483-84, 487-88, 491-92, 494-95, 497-98, 503-04, with Tr. 453, 518, 522.)

Under these circumstances, the ALJ acted lawfully in discounting Dr. Singh's opinions on the 2014 MSS.

### b. Mr. Collins's Consultative Examination

Plaintiff asserts that the opinions of Mr. Collins (working under Dr. Link) "were entitled to more than the little weight accorded to them by [the ALJ]" because, "[a]s state medical consultants, they are highly trained experts in evaluating [P]laintiff's medical impairments." (Docket Entry 11 at 15.) Consultative examiners such as Mr. Collins (and Dr. Link) do not constitute treating sources under the regulations, see 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), and thus their opinions, as a general proposition, do not warrant controlling weight, Turberville v. Colvin, No. 1:11CV262, 2014 WL 1671582, at *6 (M.D.N.C. Apr. 23, 2014) (unpublished), recommendation adopted, slip op. (M.D.N.C. May

25

15, 2014) (Eagles, J.).  The ALJ must nevertheless evaluate consultative opinions using the factors outlined in the regulations, and expressly indicate and explain the weight he or she accords to such opinions.  See 20 C.F.R. §§ 404.1527(c), 416.927(c) ("Regardless of its source, [the ALJ] will evaluate every medical opinion [he or she] receive[s]" and where an opinion does not warrant controlling weight, [the ALJ must] consider all of the . . . factors [in 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6)] in deciding the weight [to] give to any medical opinion." (emphasis added)); Social Security Ruling 96-5p, Medical Source Opinions on Issues Reserved to the Commissioner, 1996 WL 374183, at *5 (July 2, 1996) ("SSR 96-5p") (noting that ALJs "must weigh medical source statements . . . [and] provid[e] appropriate explanations for accepting or rejecting such opinions" (emphasis added)); Social Security Ruling 96-8p, Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *7 (July 2, 1996) ("SSR 96-8p") ("The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." (emphasis added)).

The ALJ discussed in some detail the findings and opinions of Mr. Collins arising from his consultative psychological examination of Plaintiff.  (See Tr. 62-63.)  However, the ALJ ultimately gave "little weight" to Mr. Collins's opinions that Plaintiff could

26

understand written instructions only up to an eighth-grade level, because Plaintiff had "graduated from high school, earning a diploma, while in regular classes." (Tr. 64; see also Tr. 437.) The ALJ similarly gave "little weight" to Mr. Collins's opinion that Plaintiff could only maintain attention to perform simple, repetitive tasks for 15 to 20 minutes, as he found that the evidence did not support that limitation. (Id.) A review of Mr. Collins's report bears out that observation. Mr. Collins noted Plaintiff's statements that her "main issues" involved "anger and frustration" (as opposed to an inability to focus or pay attention), and that her disability "is mainly physical." (Tr. 435.) Mr. Collins further observed that, other than at the outset of the examination when Plaintiff arrived 15 minutes late and had to be calmed down, "distractibility [wa]s not a significant issue." (Tr. 436 (emphasis added).) Indeed, as observed by the ALJ (see Tr. 62-63), during the mental status examination, Plaintiff displayed good immediate recall, along with intact recent and remote memory, and only committed one error in a string of simple calculations. (See Tr. 436-37.)

Thus, the ALJ did not err in his evaluation and weighing of Mr. Collins's consultative examination.

c.   **Third-Party Statement of Nancy Horne**

According to Plaintiff, the ALJ "erred in failing to accord the proper weight to the third-party report from [her] mother,

27

Nancy Horne," because "Ms. Horne helps [P]laintiff with various everyday tasks and her statements regarding [P]laintiff's limitations deserve proper weight." (Docket Entry 11 at 15.) Beyond the circular nature of this argument, Plaintiff does not indicate which of Ms. Horne's statements the ALJ should have credited, how much weight the ALJ should have afforded such statements, or how a "proper" weighing of Ms. Horne's statements would impact the outcome of her case. Under such circumstances, the Court need proceed no further. See Hughes, 2014 WL 906220, at *1 n.1 ("A party should not expect a court to do the work that it elected not to do."); see also Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires [a court] to remand a case in quest of a perfect opinion [by an ALJ] unless there is reason to believe that the remand might lead to a different result").

d. **Medicaid Disability Determination**

Finally, Plaintiff contends that the ALJ erred by failing to give "proper weight" to the disability determination of the North Carolina Department of Health and Human Services ("NCDHHS") approving Plaintiff's Medicaid application. (See Docket Entry 11 at 15-16.) According to Plaintiff, Social Security Ruling 06-03p, Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental

and Nongovernmental Agencies, 2006 WL 2329939 (Aug. 9, 2006) ("SSR 06-03p"), "states that evidence of disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered." (Docket Entry 11 at 16.) Plaintiff maintains, without supporting citation, that the NCDHHS determination should also be considered relevant to [P]laintiff's disability because [the NCDHHS] applies virtually the same rules as the Social Security Administration when determining disability." (Id.)

The regulations and SSR 06-03p make clear that the decisions of other governmental agencies, such as the NCDHHS, about whether a claimant qualifies as disabled under that agency's rules do not bind the ALJ. See 20 C.F.R. §§ 404.1504, 416.904; SSR 06-03p, 2006 WL 2329939, at *6-7. However, the ALJ must nevertheless "explain the consideration given to these decisions in the notice of decision for hearing cases . . . ." Id. at 7. The ALJ here fully complied with those mandates. The ALJ expressly considered the NCDHHS's opinion that Plaintiff remained able to perform only sedentary level work (see Tr. 585, 588) (and therefore qualified as disabled under Medical-Vocational Rule 201.14, see Tr. 582, 585), but explained that he gave the opinion "little weight" because "it was from a single decision maker who is not a doctor or licensed psychologist." (Tr. 65.) Plaintiff does not challenge the ALJ's decision to discount the NCDHHS's opinion on that ground. (See Docket Entry 11 at 15-16.)

In conclusion, Plaintiff's third assignment of error entitles her to no relief.

## III.  CONCLUSION

Plaintiff has not established an error warranting reversal or remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 10) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) be granted, and that judgment be entered for Defendant.

/s/ L. Patrick Auld

**L. Patrick Auld**
**United States Magistrate Judge**

August 25, 2016