IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SYBIL CARTER,                          )
                                       )
       Plaintiff,                      )
                                       )
   v.                                  )
                                       )
NANCY BARRYHILL,[1]                    )    1:15CV981
Acting Commissioner of Social          )
Security,                              )
                                       )
       Defendant.                      )

**ORDER**

On August 25, 2016, the United States Magistrate Judge's Memorandum Opinion and Recommendation ("Recommendation") was filed and notice was served on the parties pursuant to 28 U.S.C. § 636. [Doc. #14.] Plaintiff Sybil Carter timely objected. [Doc. #15.] After consideration of the evidence of record, this Court finds that the Commissioner of Social Security's ("Commissioner") decision is supported by substantial evidence, and as a result, will overrule Ms. Carter's objections and adopt the Recommendation.

Federal law authorizes judicial review of the Commissioner's denial of social security benefits. 42 U.S.C. § 405(g); <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely

---

[1] Nancy Berryhill recently became the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy Berryhill should be substituted for Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Act, 42 U.S.C. S 405(g).

limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ[2] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472.

---

[2] Administrative Law Judge

Ms. Carter filed an application for Social Security Disability Benefits on April 25, 2012 alleging a disability onset date of November 1, 2008. (Tr. at 262.) Ms. Carter's application was initially denied on May 11, 2012 and upon reconsideration on July 23, 2012. (Tr. at 114, 140-141.) Ms. Carter requested a hearing before an Administrative Law Judge ("ALJ"), which was held on May 9, 2014. (Tr. at 72.) Ms. Carter, her attorney, and a vocational expert ("VE") attended the hearing. (Id.) In an opinion dated July 25, 2014, the ALJ found that Ms. Carter did not qualify as disabled. (Tr. at 49-66.) Ms. Carter appealed the ALJ's finding to the Appeals Council. On November 5, 2015, the Appeals Council denied Ms. Carter's request for review. (Tr. at 1-6.)

After the Appeals Council denied review, Ms. Carter brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)) and 42 U.S.C. § 1383(c)(3), to obtain judicial review of the Commissioner's final decision denying her claim for Disability Insurance Benefits under Title II of the Social Security Act. (Compl. [Doc. #1].) Commissioner filed an Answer. [Doc. #6.] Subsequently, Ms. Carter filed a Motion for Judgment on the Pleadings [Doc. #10] and supporting Memorandum [Doc. #11]. Commissioner then filed a Motion for Judgment on the Pleadings [Doc. #12] and supporting Memorandum [Doc. #13]. The Recommendation was filed on August 25, 2016 and Ms. Carter filed her objections. [Docs. #14,15.] Thus, this case is ripe for review.

3

Case 1:15-cv-00981-NCT-LPA   Document 16   Filed 03/31/17   Page 3 of 11

Ms. Carter objects to the Recommendation with regard to three issues: (1) the Magistrate Judge erred in confirming the ALJ's determination that Ms. Carter does not meet or medically equal Listing 1.04, Disorders of the Spine, and engaged in improper fact-finding to do so, (2) the Magistrate Judge erred in not finding improper the ALJ's failure to accord appropriate weight to the opinion evidence in the record, and (3) the Magistrate Judge erred in confirming the ALJ's determination that Ms. Carter can perform a limited range of light work. (Pl.'s Objs. to Rec. of US Magistrate Judge "Pl.'s Objs." [Doc. #15].)

Ms. Carter first argues that the ALJ erred in finding that her impairments did not meet or medically equal Listing 1.04, Disorders of the Spine. (Id. at 3-5.) Ms. Carter cites to the Fourth Circuit Court of Appeal's decision in Radford v. Colvin, 734 F.3d 288 (4th Cir. 2013) in support of her assertion that remand is required where the ALJ "simply state[d] in a conclusory fashion that a plaintiff's impairments do not meet a listing." (Id. at 3.) Like the present action, Radford involved an alleged Disorder of the Spine, but in a different context. Radford concerned the ALJ adding a temporal proximity component in order to find someone disabled under Listing 1.04. The Fourth Circuit found that there is not a proximity component and remand was appropriate because of that issue. The Radford court went on to find that

> A full explanation by the ALJ is particularly important in this case because Radford's medical record includes a fair amount of evidence supportive of his claim; indeed, there are five years of medical examinations, and there is probative evidence strongly suggesting that Radford meets or equals Listing 1.04A.

4

Id. at 295. Yet, the present record does not support Ms. Carter's contention that Radford instructs that her case be remanded. She is correct that the ALJ's report does not give a thorough explanation of why he did not think she met Listing 1.04 nor a thorough application of the record to the listing criteria and the Recommendation acknowledges both these issues. (Tr. at 56; R & R. [Doc. #14] at 13.) But unlike the record in Radford, Ms. Carter's medical record does not "include a fair amount of evidence supportive of [her] claim." Radford, 734 F.3d at 295.

Specifically, there are three ways a claimant can be determined disabled under Listing 1.04.

> **1.04 Disorders of the spine** (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> OR
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpart P, App. 1, § 1.04A.

In order to meet Listing 1.04A, Ms. Carter's record would have to include "motor loss" defined as "atrophy with associated muscle weakness or muscle weakness." The record includes occasional mentioning of muscle weakness in the record (see Tr. at 22, 421), but "a report of atrophy is not acceptable as evidence of significant motor loss without circumferential measurements of both thighs and lower legs, or both upper and lower arms, as appropriate, at a stated point above and below the knee or elbow given in inches or centimeters." 20 C.F.R. Part 404, Subpart P, App. 1, § 1.00E1. There is nothing in the record regarding measurements in conjunction with assessment of muscle weakness or atrophy. Consequently, there is nothing in the record to support a finding of motor loss. That next section, Listing 1.04B, does not apply to Ms. Carter. With regard to Listing 1.04C, Ms. Carter has been diagnosed with Lumbar Spinal Stenosis and those findings were established through medically acceptable imaging. (See e.g., Tr. at 421 (June 28, 2012 appointment regarding MRI showing stenosis).) However, the record is absent of a showing that any stenosis resulted in "inability to ambulate effectively as defined in 1.00B2b." 1.00B2b instructs that

> Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as

having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R. Part 404, Subpart P, App. 1, § 1.00B2b. As the Magistrate Judge noted, "the record lacks evidence that Plaintiff requires a hand-held device to ambulate" making a finding that Ms. Carter meets Listing 1.04C not supported by substantial evidence.[3] As Ms. Carter has not directed the Court to anything specific in the record to support a finding the she did meet Listing 1.04, her objection on this issue is overruled.

Ms. Carter next argues that the ALJ erred by not giving appropriate weight to the opinions of Clyde A Collins, Dr. William Link, and Dr. Paul Singh. (Pl.'s Objs. [Doc. #15] at 7-9.) In addition, Ms. Carter asserts that the Magistrate Judge erred, "in not finding improper the ALJ's failure to accord appropriate weight to the disability determination of the North Carolina Department of Health and Human Services." (Id. at 9-10.) These assertions are not persuasive. In his decision, the ALJ explicitly referenced the treatment Ms. Carter received from Mr. Collins under the supervision of Dr. Link and the treatment from Dr. Singh. (Tr. at 59-60, 62-

---

[3] 20 C.F.R. Part 404, Subpart P, App. 1, § 1.00J details how a claimant shows medical evidence to support a finding that a claimant needs a hand-held device to ambulate. Specifically, "When an individual with an impairment involving a lower extremity or extremities uses a hand-held assistive device, such as a cane, crutch or walker, examination should be with and without the use of the assistive device unless contraindicated by the medical judgment of a physician who has treated or examined the individual. The individual's ability to ambulate with and without the device provides information as to whether, or the extent to which, the individual is able to ambulate without assistance. The medical basis for the use of any assistive device (e.g., instability, weakness) should be documented."

7

64.) Then, the ALJ expressly explained why he gave little weight to these opinions. (Tr. at 64.) With regard to Mr. Collins and Dr. Link, the ALJ found that

> a limitation for only eighth-grade level written instructions is not supported as the claimant graduated from high school, earning a diploma, while in regular classes. Nor does the evidence support a finding that the claimant can only maintain attention for 15 to 20 minute intervals for simple, repetitive tasks.

Id. With regard to Dr. Singh, the ALJ explained that

> Little weight is given to [Dr. Singh's] second MSS[4]. . .[it] was prepared approximately four months [after Dr. Singh's first MSS]. . . and while Dr. Singh lowered the claimant to a sedentary level in this report, his treating notes do not reflect any changes in the claimant's physical findings that would support such a functional decrease.

(Tr. at 63-64.) As for the North Carolina Department of Health and Human Services ("NCDHHS") decision to approve Ms. Carter for Medicaid because she is limited to sedentary work in that agency's opinion, the ALJ did expressly considered the NCDHHS's opinion. (Tr. at 585, 588.) After this consideration, the ALJ explained that he gave the opinion "little weight" because "it was from a single decision maker who is not a doctor or licensed psychologist." (Tr. at 65.) Because, contrary to Ms. Carter's assertions, the ALJ did explain why he did not give the opinions of Mr. Collins, Dr. Link, Dr. Singh, and NCDHHS great weight, this objection fails.

---

[4] Medical Source Statement

8

Ms. Carter's final objection is that the Magistrate Judge "erred in confirming the ALJ's determination that [she] can perform a limited range of light work. " (Pl.'s Objs. [Doc. #15] at 10-14.) She argues that

> Plaintiff is unable to perform substantial gainful employment at any exertional level. Specifically, [the ALJ] failed to account for the need to change positions at least as frequently as every 15 minutes that was assessed by plaintiff's treating physician and confirmed by her credible testimony. (Tr. 82, 577) Furthermore, the North Carolina Department of Health & Human Services determined that plaintiff can only perform work at the sedentary exertional level and she now receives benefits due to this finding.

Id. at 11. After consideration, the record does not support Ms. Carter's contention.

The evidence that Ms. Carter refers to in this objection is her own, Dr. Singh's second MSS, and the NCDHHS determination. As explained supra, the ALJ explained why he did not find Dr. Singh's second MSS nor the NCDHHS determination persuasive. In addition, the ALJ articulated why he did not find Ms. Carter credible.

> [T]he undersigned finds that [Plaintiff's] reported level of activity is not consistent with an inability to perform all work. She reports performing daily tasks such as taking her daughter to school, caring for a pet, and performing light housework. She indicates that she enjoys fishing, and goes once or twice a week, weather permitting.

(Tr. at 63.) Because the ALJ explained the weight he gave to these sources, this objection is overruled.

Ms. Carter includes another argument within her third objection.

9

> [The] RFC[5] analysis failed to fully and accurately account for the plaintiff's mental limitations in concentration, persistence, and pace. Where a plaintiff has limitations in concentration, persistence, or pace, an ALJ does not account for such limitations by restricting the plaintiff's residual functional capacity to simple, routine tasks or unskilled work. The ability to perform simple tasks differs from the ability to stay on task.

Id. at 12. Ms. Carter cites to the Fourth Circuit Court of Appeals' decision in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015) in support of her assertion that remand is required where the ALJ finds the claimant has limitations in concentration, persistence, or pace, but does not account for those in the RFC. The Mascio court did hold that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." Mascio, 780 F.3d at 638. However, the Mascio court went on to state that "the ALJ may find that the concentration, persistence, or pace limitation does not affect [claimant's] ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert." Id. That is exactly what the ALJ did in Ms. Carter's RFC determination. The ALJ did include a limitation to simple, routine, repetitive tasks in his hypotheticals to the VE. (Tr. at 96.) However, the ALJ also explained that, although Ms. Carter had "moderate difficulty maintaining concentration, persistence, or pace," "she retains the capacity for understanding, retaining, and completing simple, routine, repetitive tasks." (Tr. at 56.) The ALJ

---

[5] Residual Functional Capacity

10

cited to medical evidence in the record in support of this conclusion. (Tr. at 63; Ex. 2F at 4-5.) Unlike the ALJ in Mascio, the ALJ here did explain why he did not include any limitations in concentration, persistence, or pace beyond the limitation to simple, routine, repetitive tasks in the hypotheticals to the VE. Thus, Ms. Carter's argument on this issue fails.

For the reasons stated herein, the Court adopts the Magistrate Judge's Recommendation [Doc. #14]. **IT IS HEREBY ORDERED** that Plaintiff's Motion for Judgment on the Pleadings [Doc. #10] is **DENIED**, Defendant's Motion for Judgment on the Pleadings [Doc. #12] is **GRANTED**, and the action is **DISMISSED WITH PREJUDICE**. A judgment dismissing this action will be filed contemporaneously with this Order.

This the 31st day of March, 2017.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge
